# Nos. 21-16506, 21-16695

# In the United States Court of Appeals for the Ninth Circuit

———————————

Epic Games, Inc.,

*Plaintiff, Counter-Defendant — Appellant, Cross-Appellee,*

v.

Apple Inc.,

*Defendant, Counterclaimant — Appellee, Cross-Appellant.*

———————————

On Appeal from the United States District
Court for the Northern District of California
(Case No. 4:20-cv-5640) (District Judge Yvonne Gonzalez Rogers)

———————————

## BRIEF OF WASHINGTON LEGAL FOUNDATION AS AMICUS CURIAE SUPPORTING PARTIAL REHEARING EN BANC

———————————

John M. Masslon II
Cory L. Andrews
Washington Legal Foundation
2009 Massachusetts Ave., NW
Washington, DC 20036
(202) 588-0302
jmasslon@wlf.org

June 16, 2023

## DISCLOSURE STATEMENT

Washington Legal Foundation has no parent company, issues no stock, and no publicly held company owns a ten percent or greater interest in it.

# TABLE OF CONTENTS

**Page**

DISCLOSURE STATEMENT ..................................................................i

TABLE OF AUTHORITIES ................................................................iii

INTEREST OF AMICUS CURIAE ........................................................1

SUMMARY OF ARGUMENT .............................................................1

ARGUMENT ......................................................................................3

    THE PANEL ERRED BY AFFIRMING A NATIONWIDE INJUNCTION THAT VIOLATES CORE FEDERALISM PRINCIPLES ...............................3

    A.   States' Exercising Legislative Power Outside Their Borders Violates Horizontal Federalism Principles..............3

    B.   Other States Reject California's Policy Views On What Constitutes Unfair Competition ............................................7

    C.   *National Pork Producers Council* Supports Rehearing .......12

CONCLUSION ...................................................................................16

CERTIFICATE OF COMPLIANCE.......................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Beverage Ass'n v. Snyder*,
735 F.3d 362 (6th Cir. 2013)................................................................. 1

*Baldwin v. G.A.G. Seelig*,
294 U.S. 511 (1935).......................................................................... 5, 6

*BMW of N. Am., Inc. v. Gore*,
517 U.S. 559 (1996)............................................................................ 7

*H. P. Hood & Sons, Inc. v. Du Mond*,
336 U.S. 525 (1949)............................................................................ 4

*Healy v. Beer Inst.*,
491 U.S. 324 (1989)............................................................................ 6

*Hughes v. Oklahoma*,
441 U.S. 322 (1979)............................................................................ 4

*Huntington v. Attrill*,
146 U.S. 657 (1892)............................................................................ 5

*Island Mortg. of N.J., Inc. v. 3M*,
860 A.2d 1013 (N.J. Super. Law 2004)................................................. 8

*Johnson v. Microsoft Corp.*,
834 N.E.2d 791 (Ohio 2005)................................................................ 8

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012).............................................................. 11

*Molo Oil v. River City Ford Truck Sales*,
578 N.W.2d 222 (Iowa 1998)................................................................ 8

*Nat'l Pork Producers Council v. Ross*,
143 S. Ct. 1142 (2023)................................................ 2, 12, 13, 14, 15

# TABLE OF AUTHORITIES
## (*continued*)

**Page(s)**

*New York Life Ins. Co. v. Head*,
234 U.S. 149 (1914)..................................................................5

*Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Almaeda*,
575 U.S. 1034 (2015)...............................................................1

*S. Pac. Co. v. Arizona ex rel. Sullivan*,
325 U.S. 761 (1945)..................................................................6

*Shelby Cnty., Ala. v. Holder*,
570 U.S. 529 (2013)..................................................................5

*State v. Daicel Chem. Indus.*,
840 N.Y.S.2d 8 (N.Y. App. Div. 2007)..................................8

*Stromberg v. Qualcomm Inc.*,
14 F.4th 1059 (9th Cir. 2021) ..............................................11

## Constitutional Provision

U.S. Const. art. I, § 8, cl. 3 ........................................................4

## Statutes

Ala. Code § 8-19-5......................................................................8

Ariz. Rev. Stat.
§ 44-1528 ...............................................................................8
§ 44-1528(A) ..........................................................................9

Ark. Code
§ 4-75-206..............................................................................9
§ 4-75-207..............................................................................9
§ 4-75-208..............................................................................9
§ 4-75-209..............................................................................9

La. Rev. Stat. § 51:1409 ...........................................................8

iv

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Mont. Code
    § 30-14-103 ................................................................................ 8
    § 30-14-133 ................................................................................ 8

N.M. Stat. § 57-12-15 ................................................................ 8

S.C. Code Ann.
    § 39-5-50 .................................................................................. 8
    § 39-5-140 ................................................................................ 8

Tenn. Code
    § 47-18-106 .............................................................................. 8
    § 47-18-109 .............................................................................. 8

Wis. Stat. § 100.20 .................................................................... 8

**Other Authorities**

ABA Section of Antitrust Law, *State Antitrust
Practice and Statutes* (5th ed. 2014) ...................................... 8

The Federalist
    No. 6 ........................................................................................ 4
    No. 7 ........................................................................................ 4
    No. 10 ...................................................................................... 5
    No. 42 ...................................................................................... 4
    No. 45 ...................................................................................... 5

Gil Seinfeld, *Reflections on Comity in
the Law of American Federalism*,
90 Notre Dame L. Rev. 1309 (2015) ...................................... 6

Katherine Florey, *State Courts, State Territory, State Power:
Reflections on the Extraterritoriality Principle
in Choice of Law and Legislation*,
84 Notre Dame L. Rev. 1057 (2009) ...................................... 6

v

# TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

Margaret Meriwether Cordray, *The Limits
    of State Sovereignty and the Issue of
    Multiple Punitive Damages Awards*,
    78 Ore. L. Rev. 275 (1999) ...................................................................7

Merrill Jensen, *The New Nation: A History of the United
    States During the Confederation, 1781-1789* (1950) ...........................4

Michael Acton, *Epic Games-Apple US Appeals Court Ruling
    Shows Power of California's Competition Law, Blizzard
    Says,* MLex (May 10, 2023) ...............................................................7

## INTEREST OF AMICUS CURIAE[1]

Washington Legal Foundation is a nonprofit, public-interest law firm and policy center with supporters nationwide. WLF promotes free enterprise, individual rights, limited government, and the rule of law. It often appears as amicus in important federalism cases. *See, e.g.*, *Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Almaeda*, 575 U.S. 1034 (2015) (per curiam); *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362 (6th Cir. 2013).

## SUMMARY OF ARGUMENT

**A.** One main reason why the Articles of Confederation failed was that they allowed the States to regulate interstate and international commerce. When the Framers gathered in Philadelphia during the summer of 1787, they recognized the problem and drafted a constitution that reserves that power exclusively for Congress and bars States from regulating commerce outside their borders. The Commerce Clause has been critical to the continued success of the American experiment.

---

[1] No party's counsel authored any part of this brief. No one, apart from WLF and its counsel, contributed money intended to fund the brief's preparation or submission. All parties consented to WLF's filing this brief.

**B.** California has a very aggressive approach to unfair competition. It is one reason why so many businesses have fled the State and relocated to more business-friendly States. These other States reject California's approach to unfair competition laws, which is their right. But the nationwide injunction the panel affirmed here allows California to enforce its unfair competition law beyond its borders. This Court's precedent requires courts to consider these federalism concerns when deciding whether to affirm such a broad injunction. The panel's failure to do so warrants rehearing en banc.

**C.** After the panel's decision, the Supreme Court decided *Nat'l Pork Producers Council v. Ross*, 143 S. Ct. 1142 (2023). That case supports granting Apple's rehearing petition. A majority of the Supreme Court rejected a State's ability to substantially burden interstate commerce. That is exactly what the panel here blessed. The panel's decision allows California to apply its unfair competition law in a way that substantially burdens interstate commerce. Thus, that intervening precedent supports rehearing the case en banc so this Court's precedent adheres to the Supreme Court's recent decision.

# ARGUMENT

## THE PANEL ERRED BY AFFIRMING A NATIONWIDE INJUNCTION THAT VIOLATES CORE FEDERALISM PRINCIPLES.

As described in Apple's panel-stage brief (at 104-09) and rehearing petition (at 7-16), the panel erred by affirming the District Court's finding that it violated California's UCL. But even if this Court agrees with the panel's decision or believes that the holding does not warrant rehearing en banc, it should still grant Apple's petition to review the panel's decision affirming the nationwide injunction. *See* Apple's Panel-Stage Br. 109-12; Reply Br. 24-26; Rehearing Pet. 17-19. That remedy violates horizontal federalism principles that ensure the United States's continued viability as a nation comprised of fifty sovereigns.

### A. States' Exercising Legislative Power Outside Their Borders Violates Horizontal Federalism Principles.

When people invoke federalism, they usually mean vertical federalism—the relationship between the federal government and States. Horizontal federalism is the other side of the federalism coin. It involves how the States interact with each other. When adopting the Articles of Confederation after the Revolutionary War, the thirteen States included no safeguards against burdening interstate commerce.

*See* Merrill Jensen, *The New Nation: A History of the United States During the Confederation, 1781-1789*, 245-57 (1950). The Founders quickly recognized that this structure was broken and needed reform. Indeed, one reason that the Constitutional Convention happened was in response to the "Balkanization that [] plagued" the States "under the Articles of Confederation." *Hughes v. Oklahoma*, 441 U.S. 322, 325-26 (1979) (citing *H. P. Hood & Sons, Inc. v. Du Mond*, 336 U.S. 525, 533-34 (1949)); *see* The Federalist No. 7, 62-63 (Alexander Hamilton) (Clinton Rossiter ed. 1961).

To solve that problem, States gave Congress authority to "regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3; *see* The Federalist No. 42 at 267-68 (James Madison). The Commerce Clause was so critical to a functioning federal government that it was the first substantive power the new Constitution delegated to Congress. States disclaimed any ability to regulate interstate commerce. They ceded this power so commerce could flourish.

The Framers also thought all States were disposed "to aggrandize themselves at the expense of their neighbors." The Federalist No. 6 at 60 (Alexander Hamilton) (quotation omitted). They feared this would lead

to factions—the ultimate poison for the Union; the "most common and durable source" of factions is economic inequality. The Federalist No. 10 at 79 (James Madison).

Maintaining each State's sovereignty was the solution to the problem. Every State retained its "ordinary course of affairs, concern[ing] the lives, liberties, and properties of the people, and the internal order, improvement, and prosperity of the State." The Federalist No. 45 at 293 (James Madison); *see Shelby Cnty., Ala. v. Holder*, 570 U.S. 529, 543 (2013). Sovereignty necessarily includes prohibiting encroachment of state power across borders. Otherwise, state sovereignty is illusory.

Factions quickly form if state borders are merely nominal. So the Supreme Court has zealously guarded them: "Laws have no force of themselves beyond the jurisdiction of the State which enacts them." *Huntington v. Attrill*, 146 U.S. 657, 669 (1892); *see also New York Life Ins. Co. v. Head*, 234 U.S. 149, 160-61 (1914). The Framers built the new Constitution on the premise that "the peoples of the several states must sink or swim together, and that in the long run prosperity and salvation are in union and not division." *Baldwin v. G.A.G. Seelig*, 294 U.S. 511,

523 (1935). The solution included unity in interstate trade while respecting the States' sovereignty within their own borders.

The dormant Commerce Clause prevents States from legislating extraterritorially. It strikes a balance between limiting actions that discriminate against fellow States and maintaining "the autonomy of the individual States within their respective spheres" on the other. *Healy v. Beer Inst.*, 491 U.S. 324, 335-36 (1989). Properly limiting States' jurisdictions "confin[es] each state to its proper sphere of authority[ ]in a federalist system." Katherine Florey, *State Courts, State Territory, State Power: Reflections on the Extraterritoriality Principle in Choice of Law and Legislation*, 84 Notre Dame L. Rev. 1057, 1093 (2009). When "the burden of state regulation falls on" other States, typical "political restraints" are ineffective. *S. Pac. Co. v. Arizona ex rel. Sullivan*, 325 U.S. 761, 767-68 n.2 (1945) (collecting cases).

At bottom, States must "recognize, and sometimes defer to, the laws, judgments, or interests of another." Gil Seinfeld, *Reflections on Comity in the Law of American Federalism*, 90 Notre Dame L. Rev. 1309, 1309 (2015). Policy judgments must be respected even if the people or leaders of another State vehemently disagree. The Constitution requires

6

that "while an individual state may make policy choices for its own state, a state may not impose those policy choices on the other states." Margaret Meriwether Cordray, *The Limits of State Sovereignty and the Issue of Multiple Punitive Damages Awards*, 78 Ore. L. Rev. 275, 292 (1999) (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568-73 (1996)). But the panel blessed California's imposing its UCL views throughout the nation. *See* Michael Acton, *Epic Games-Apple US Appeals Court Ruling Shows Power of California's Competition Law, Blizzard Says,* MLex (May 10, 2023), https://tinyurl.com/38m3mhrk. This violates the principles of horizontal federalism that are key to our federal form of government.

**B.    Other States Reject California's Policy Views On What Constitutes Unfair Competition.**

The panel's ruling affirming a nationwide injunction harms other States' sovereign interests. Many States have rejected California's broad definition of unfair competition and the law's broad remedies provision. But even if every State's UCL statute mirrored California's law, that would not excuse the panel's affirming a nationwide injunction for a violation of California law.

Fourteen States' UCLs do not apply to anticompetitive conduct.[2] In these States, unfair competition is generally defined as deceiving customers, not harming competition. *E.g.*, Ala. Code § 8-19-5. The panel did not hold that Apple deceived Epic or other app developers. The relevant contract was clear about prohibited conduct. Enjoining Apple's conduct in these fourteen States means that those state legislatures' policy choices are being overridden by California's legislature. This is a quintessential violation of horizontal federalism.

Another eight States do not permit injunctive relief in private suits for UCL violations.[3] In many of these States, only the sovereign may seek

---

[2] The States are Alabama, Delaware, Georgia, Indiana, Kansas, Maryland, New Jersey, New York, Ohio, Oklahoma, Oregon, South Dakota, Virginia, and Wyoming. *See* ABA Section of Antitrust Law, *State Antitrust Practice and Statutes* (5th ed. 2014) at 2-48, 9-15, 12-1, -19, -20, 17-31, 19-27, 23-40, 35-1, 39-21 to -22, 40-1, -37 to -38, 45-1, -12, 50-32, and 55-23; *see also State v. Daicel Chem. Indus.*, 840 N.Y.S.2d 8, 12 (N.Y. App. Div. 2007); *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 802 (Ohio 2005); *Island Mortg. of N.J., Inc. v. 3M*, 860 A.2d 1013, 1016 (N.J. Super. Law 2004).

[3] The States are Arizona, Iowa, Louisiana, Montana, New Mexico, South Carolina, Tennessee, and Wisconsin. *See* Ariz. Rev. Stat. § 44-1528; La. Rev. Stat. § 51:1409; Mont. Code §§ 30-14-103, 30-14-133; N.M. Stat. § 57-12-15; S.C. Code Ann. §§ 39-5-50, 39-5-140; Tenn. Code §§ 47-18-106, 47-18-109; Wis. Stat. § 100.20; *Molo Oil v. River City Ford Truck Sales*, 578 N.W.2d 222 (Iowa 1998).

an injunction. *E.g.*, Ariz. Rev. Stat. § 44-1528(A). But this is a suit brought by a single private party—not a government. The political capital necessary for a sovereign to sue dwarfs the political capital required to file an amicus brief. And this political accountability is one reason that many legislatures bar private plaintiffs from seeking injunctive relief for UCL violations. They want the party seeking an injunction to face the voters. But the nationwide injunction disregards these state-level policy choices. The injunction permits California to dictate the remedies available in other States. This is another afront to horizontal federalism principles.

Although some States permit private parties to seek injunctive relief for UCL violations based on anticompetitive conduct, many of those States severely limit the claim. For example, Arkansas provides that only four types of anticompetitive behavior are actionable under its UCL. *See* Ark. Code §§ 4-75-206 to -209. So many States do not allow for a claim for injunctive relief like California does. Again, enjoining Apple's conduct in these States violates horizontal federalism principles.

Combined, twenty-two States bar an injunction for an anticompetitive-conduct claim brought by a private party. Although some

9

of these States' attorneys general supported Epic, that was likely for political reasons. The States themselves are in fact injured by California's legislating outside its borders. One State that joined a panel-stage amicus brief, Texas, recently sought leave to file a bill of complaint against California for similar behavior. *See* Mot. for Leave to File a Bill of Compl., *Texas v. California*, 141 S. Ct. 1469 (2021) (per curiam) (No. 153 Original). The Court should look to Texas's arguments there for how the nationwide injunction hurts the States; it tracks the arguments above.

The panel's decision did not touch on these federalism issues. The words "federalism" and "extraterritorial" are absent from the opinion. That is because there is no discussion of whether the injunction is too broad geographically. The panel opinion includes only one paragraph of analysis about the "[s]cope of the [i]njunction." Opinion at 85. That paragraph doesn't rebut the federalism arguments made above. Nor does it even touch on the geographic scope of the injunction. Rather, it touches on what conduct is covered—the non-geographic scope of the injunction.

This failure to consider federalism concerns conflicts with binding Ninth Circuit precedent. This Court has held that district courts err

when they "apply[] California law to [a] nationwide class" because doing so "improperly impair[s]" other States' policies "by allowing California to set [] enforcement policy for the entire country." *Stromberg v. Qualcomm Inc.*, 14 F.4th 1059, 1074 (9th Cir. 2021). Allowing States to impair other States' policies violates federalism and courts must consider these federalism concerns. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593-94 (9th Cir. 2012).

The panel did not even try to distinguish *Stromberg* and *Mazza*. Rather than address this case law and the underlying federalism concerns, the panel pretended that the nationwide injunction has no federalism problems. The Court should not allow a panel to silently create such an intra-circuit split. Doing so invites uncertainty and encourages panels to ignore circuit precedent they do not agree with. If a panel does not like binding circuit precedent, it should seek to have the case heard en banc so that precedent can be properly reconsidered. Granting Apple's rehearing petition would help ensure that panels don't feel free to ignore circuit precedent.

C.    *National Pork Producers Council* **Supports Rehearing.**

After the panel's decision here, the Supreme Court decided *National Pork Producers Council*. There, the Court affirmed this Court's decision that California's law about selling pork in the State did not violate federalism principles. A careful examination of that decision shows that most of the Court believes that applying California's UCL outside the State's borders violates federalism principles.

As Chief Justice Roberts explained, at least six justices believe that federalism concerns "extend[] beyond laws either concerning discrimination or governing interstate transportation." *Nat'l Pork Producers Council*, 143 S. Ct. at 1168 (Roberts, C.J., concurring and dissenting) (citations omitted). Chief Justice Roberts, Justice Alito, Justice Kavanaugh, and Justice Jackson would have found that the animal welfare law's substantial burden on commerce warranted further inquiry. *Id.* at 1172.

Justices Sotomayor and Kagan agreed that federalism concerns stretch beyond discrimination or interstate transportation. They, however, believed that the plaintiffs "fail[ed] to allege a substantial burden on interstate commerce." *Nat'l Pork Producers Council*, 143 S. Ct.

at 1165 (Sotomayor, J., concurring). That is why they voted to affirm this Court's decision upholding California's animal welfare statute.

Again, as described in § B, *supra*, the nationwide injunction that the panel affirmed substantially burdens interstate commerce. Any company doing business in California becomes subject to an injunction affecting its actions across the country. True, Apple is unlikely to exit the market in California and focus its business elsewhere. But that does not mean that other companies will not take that route. Some companies are willing to shoulder the increased expense of complying with California's UCL when transacting business in the State. But those companies cannot bear the burden of those costs across the entire business. Yet that is what the panel decision here requires. It blesses California's extending the reach of its UCL far outside its borders to punish out-of-state conduct.

This contrasts with the facts of *National Pork Producers Council*. There, the California law only regulated sales within the State's borders. If a company could raise a pig, slaughter it, and sell the pork all in the State of North Carolina then California's animal welfare law would not govern the transaction. It was only when pork was sold in the State of California that the animal welfare law applied. Still, the question of

whether that law violated federalism principles sharply divided the Supreme Court. The justices issued many lengthy (and fractured) opinions on the weighty question. The panel opinion here, however, is silent on these important federalism issues. This Court shouldn't sanction silence on legal issues critical to a case's outcome.

Even the three justices most critical of the challenge to California's animal welfare law did not foreclose a challenge to an injunction like this one. They believe that courts cannot "compare or weigh economic costs (to some) against noneconomic benefits (to others)." *Nat'l Pork Producers Council*, 143 S. Ct. at 1159 (plurality). There, the economic costs were the increased pork prices. The noneconomic benefits were the "good vibes" that some animal rights activists feel when they eat pork that comes from a pig whose sow had lots of room in its pen.

Here, Epic does not claim that there is some noneconomic benefit from having a nationwide injunction barring Apple from violating California's UCL. Nor does the panel make such an argument in its decision affirming the nationwide injunction. In fact, the panel's opinion shows that the only benefit to the nationwide injunction is economic.

Again, there is only one paragraph in the panel's opinion addressing the scope of the injunction. That paragraph says that the injunction stops Apple from "(1) increasing the costs of Epics' [sic] subsidiaries' apps that are still on the App Store, and (2) preventing other apps' users from becoming would-be Epic Games Store consumers." Opinion at 85. These, of course, are purely economic interests.

In *National Pork Producers Council*, six justices were skeptical that States can regulate conduct outside of their borders in the way the nationwide injunction does here. As Justice Kavanaugh said, California violates federalism principles by "attempt[ing], in essence, to unilaterally impose its . . . policy preferences . . . on the rest of the Nation." *Nat'l Pork Producers Council*, 143 S. Ct. at 1174 (Kavanaugh, J., concurring and dissenting). The other three justices never reached that question because they concluded that, under the facts of that case, it was impossible to weigh competing economic and noneconomic interests. This Court should thus rehear this case so that it can apply the lessons of *National Pork Producers Council* to these facts.

\*    \*    \*

15

The panel correctly held that Apple did not violate federal antitrust laws. This decision ensures that companies like Apple have ample incentive to invest and innovate, which benefits all Americans. The panel erred, however, by affirming the District Court's order finding that Apple violated California's UCL. Even if the Court does not believe that whether Apple violated the UCL deserves en banc review, this Court should grant Apple's rehearing petition to reconsider the scope of the nationwide injunction.

## CONCLUSION

This Court should grant Apple's rehearing petition.

> Respectfully submitted,
>
> /s/ John M. Masslon II
> John M. Masslon II
> Cory L. Andrews
> WASHINGTON LEGAL FOUNDATION
> 2009 Massachusetts Ave. NW
> Washington, DC 20036
> (202) 588-0302
> jmasslon@wlf.org
>
> *Counsel for Amicus Curiae*
> *Washington Legal Foundation*

June 16, 2023

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limits of Ninth Circuit Rule 29-2(c)(2) because it contains 2,975 words, excluding the parts exempted by Federal Rule of Appellate Procedure 32(f).

I also certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Century Schoolbook font.

/s/ John M. Masslon II
JOHN M. MASSLON II
*Counsel for Amicus Curiae*
*Washington Legal Foundation*

June 16, 2023

17