Nos. 21-16506, 21-16695

IN THE
UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

EPIC GAMES, INC.,
*Plaintiff-counter-defendant-Appellant*,

v.

APPLE, INC.,
*Defendant-counter-claimant-Appellee.*

On Appeal from the United States District Court for the Northern District of California
No. 4:20-cv-05640-YGR
Hon. Yvonne Gonzalez Rogers

# BRIEF OF UTAH AND 34 OTHER STATES AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFF-COUNTER-DEFENDANT-APPELLANTS' PETITION FOR PANEL REHEARING AND/OR REHEARING EN BANC

Office of the Attorney General
350 N. State Street, Ste. 230
P.O. Box 142320
Salt Lake City, UT 84114
(801) 538-9600
melissaholyoak@agutah.gov
*Counsel of Record

SEAN D. REYES
Attorney General of Utah
MELISSA A. HOLYOAK*
Solicitor General
STANFORD E. PURSER
Deputy Solicitor General

*Counsel for* Amici *States*
*Additional counsel listed with signature block*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... ii
INTRODUCTION AND INTEREST OF *AMICI* STATES .......... 1
ARGUMENT .......... 2
I. The Panel Wrongly Held the District Court's Failure to Reach the Rule of Reason's Fourth Step—Balancing the Overall Competitive Effects of Apple's Restraints—Was Harmless Error. .......... 2
II. The Panel's Holding is Inconsistent with Supreme Court Precedent That Requires Careful Balancing of Anticompetitive Harms and Procompetitive Benefits. .......... 9
CONCLUSION .......... 16
ADDITIONAL COUNSEL .......... 17
CERTIFICATE OF COMPLIANCE .......... 19
CERTIFICATE OF SERVICE .......... 20

## TABLE OF AUTHORITIES

**Cases**


*Arizona v. Maricopa Cnty. Med. Soc'y*,
457 U.S. 332 (1982) .......... 11
*Bd. of Trade of Chicago v. United States*,
246 U.S. 231 (1918) .......... 9
*Bhan v. NME Hosps., Inc.*,
929 F.2d 1404 (9th Cir. 1991) .......... 11
*Cal. Dental Ass'n v. F.T.C.*,
526 U.S. 756 (1999) .......... 14
*Cnty. of Tuolumne v. Sonora Cmty. Hosp.*,
236 F.3d 1148 (9th Cir. 2001) .......... 11
*Continental T.V., Inc. v. GTE Sylvania Inc.*,
433 U.S. 36 (1977) .......... 10
*Georgia v. Pa. R.R.*,
324 U.S. 439 (1945) .......... 1
*Haddad v. Lockheed Cal. Corp.*,
720 F.2d 1454 (9th Cir. 1983) .......... 7
*In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*,
375 F. Supp. 3d 1058 (N.D. Cal. 2019) .......... 13
*Kotteakos v. United States*,
328 U.S. 750 (1946) .......... 3
*L.A. Mem'l Coliseum Comm'n v. NFL*,
726 F.2d 1381 (9th Cir. 1984) .......... 11
*Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*,
551 U.S. 877 (2007) .......... 10, 11
*Nat'l Soc'y of Pro. Eng'rs v. United States*,
435 U.S. 679 (1978) .......... 10
*NCAA v. Alston*,
141 S. Ct. 2141 (2021) .......... 9, 13, 14
*NCAA v. Bd. of Regents*,
468 U.S. 85 (1984) .......... 10
*Obrey v. Johnson*,
400 F.3d 691 (9th Cir. 2005) .......... 6
*Shinseki v. Sanders*,
556 U.S. 396 (2009) .......... 2

*State Oil Co. v. Khan*,
522 U.S. 3 (1997) .......... 10
*Tommasetti v. Astrue*,
533 F.3d 1035 (9th Cir. 2008) .......... 6
*United States v. Koenig*,
912 F.2d 1190 (9th Cir. 1990) .......... 6
*United States v. Wright*,
46 F.4th 938 (9th Cir. 2022) .......... 6

**Statutes**

15 U.S.C. § 15c .......... 1
15 U.S.C. §§ 1-7 .......... 1
28 U.S.C. § 2111 .......... 2

**Other Authorities**

*The Demise of the Rule of Reason*,
24 Lewis & Clark L. Rev. 951 (2020) .......... 12, 13

## INTRODUCTION AND INTEREST OF *AMICI* STATES

*Amici curiae*, the States of Utah, Alaska, Arizona, Arkansas, Colorado, Connecticut, District of Columbia, Delaware, Florida, Hawaii, Idaho, Illinois, Iowa, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, North Dakota, Ohio, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, and Texas respectfully submit this brief in support of Epic Games, Inc.

Epic sued Apple, Inc. over Apple's practices relating to its iOS App Store. Epic's flagship video game *Fortnite* had more than 115 million registered players on iOS devices before Apple removed *Fortnite* from the App Store. The panel affirmed the district court's ruling in favor of Apple on the alleged antitrust violations and in favor of Epic on the remaining California unfair competition count. Each of the *Amici* States has consumers that use the iOS platform and has an interest in ensuring a competitive marketplace for its consumers.

Further, the attorneys general of the *Amici* States are authorized to bring federal antitrust actions to protect their citizens from the harmful effects of anticompetitive conduct. 15 U.S.C. § 15c; *Georgia v. Pa. R.R.*,

324 U.S. 439, 443 (1945). *Amici* States thus have a strong interest in ensuring that federal courts apply clear and effective standards for liability under the Sherman Act, 15 U.S.C. §§ 1-7, so that they may effectively enforce antitrust laws in all aspects of the economy, including the smartphone industry which, with hardware, products, and services, is approaching a trillion dollars annually.

Accordingly, *Amici* States submit this brief in support of Epic's petition for panel rehearing and/or rehearing en banc.

## ARGUMENT

### I. The Panel Wrongly Held the District Court's Failure to Reach the Rule of Reason's Fourth Step—Balancing the Overall Competitive Effects of Apple's Restraints—Was Harmless Error.

The panel found multiple legal errors by the district court including its failure to perform the fourth step of the rule-of-reason analysis. Op. 24, 65. But the panel wrongly forgave this error as harmless. *Id.* at 65. While Judge Thomas agreed with the panel regarding the district court's legal errors, he disagreed that those legal errors were harmless because they "affect[ed Epic's] substantial rights." Op. 91 (Thomas, J., dissenting) (internal quotation marks omitted).

An error is harmless only if it does not affect the "substantial rights

of the parties." 28 U.S.C. § 2111. An error implicates substantial rights if it likely affects the outcome, or the "perceived fairness, integrity, or public reputation of judicial proceedings." *Shinseki v. Sanders*, 556 U.S. 396, 411-12 (2009). In assessing whether substantial rights are affected, the Supreme Court instructs that "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Here, it is impossible to conclude that Epic's substantial rights were not affected when the district court *completely skipped* the final step of the rule-of-reason analysis.

Epic brought claims under Sections 1 and 2 of the Sherman Act for restraint of trade, tying, and monopoly maintenance. Op. 20-22. Absent any allegations of *per se* illegal restraints, courts apply the "Rule of Reason"—a multistep, burden-shifting framework—to determine Sherman Act violations. Op. 26-27. The district court proceeded under this framework, thoroughly examining the anticompetitive effects of Apple's conduct, ER146-48, 152, 155, the procompetitive rationales, ER148-50, 152-

53, 155, and any less restrictive alternatives, ER150-53, 155. But then the district court stopped. Immediately after analyzing the less restrictive alternatives, the district court concluded: "Accordingly, the Court finds that Apple's app distribution restrictions do not violate Section 1 of the Sherman Act." ER152; *see also* ER153, 155. The district court did not proceed with the final fourth step where it was supposed to balance the anticompetitive effects of Apple's conduct against its procompetitive benefits. Op. 64-65.

The panel recognized this was error: "We hold that our precedent requires a court to proceed to this fourth step where, like here, the plaintiff fails to carry its step-three burden of establishing viable less restrictive alternatives." Op. 65. The district court stopped short of the fourth step and made no attempt to balance the harms and benefits of Apple's conduct. But the panel found this error was harmless based on one sentence at the end of the district court's opinion stating that procompetitive effects "offset" anticompetitive effects. Op. 67 (quoting ER160 (emphasis removed)). The panel incorrectly reasoned that the district court's cursory "offset" conclusion satisfied the rule-of-reason's rigorous balancing requirement. That error warrants panel or en banc rehearing for several

reasons.

*First*, the sentence relied on by the panel was simply a *summary* of the district court's *entire* (and admittedly truncated) rule-of-reason analysis. The sentence provides:

> Here, the Court has carefully considered the evidence in the record and has determined, based on the rule of reason, that the DPLA provisions at issue in Counts 3 (app distribution) and 5 (IAP) have procompetitive effects that offset their anti-competitive effects, and that Epic Games has not shown that these procompetitive effects can be achieved with other means that are less restrictive.

ER160. The sentence follows the same order of the first three steps of the rule-of-reason analysis the district court performed. ER146-52. The sentence cannot be reasonably interpreted as *adding* findings on the rule-of-reason's fourth step when such findings were nowhere to be found in the court's rule-of-reason analysis. *Compare* ER160 *with* ER146-52. Indeed, that sentence provides no basis for this Court to divine what the district court would have done without its legal error.

Nor can the panel's harmless error holding be justified based on any alternative ruling from the district court. In responding to Judge Thomas's dissent about a different legal error (that an antitrust market can never be defined around unlicensed or unsold products), the majority

recognized the lack of direct authority for harmlessness but argued that "treating an error as harmless in light of an ***independent and sufficient alternative finding*** is standard fare in appellate courts." Op. 40 (emphasis added).[1]

Yet while the district court provided an alternative holding for the unsold-product-market error, ER130, the same cannot be said about the district court's failure to complete the rule-of-reason's fourth step. The district court did not even acknowledge the *existence* of a fourth step, much less offer up any alternative findings that would justify the panel's ex post balancing. Without an alternative holding, there is nothing in the lower court's opinion on which the panel could viably anchor its harmlessness holding.

*Second*, the panel's prediction of the district court's balancing

[1] The panel cited: *United States v. Wright*, 46 F.4th 938, 944 (9th Cir. 2022) ("[The district court's . . . error was harmless in light of its alternative holding . . . ." (capitalization standardized)); *Tommasetti v. Astrue*, 533 F.3d 1035, 1042 (9th Cir. 2008) ("Although the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five."); *United States v. Koenig*, 912 F.2d 1190, 1190 (9th Cir. 1990) ("We agree [with the appellant's assertion of error], but conclude that the district court made alternative rulings that render any error harmless.").

amounts to appellate factfinding. "The danger of the harmless error doctrine is that an appellate court may usurp the jury's function . . . ." *Obrey v. Johnson*, 400 F.3d 691, 701 (9th Cir. 2005) (quoting *Haddad v. Lockheed Cal. Corp.*, 720 F.2d 1454, 1459 (9th Cir. 1983)). Judge Thomas departed from the majority for essentially that reason—there was "no direct authority" for applying harmlessness to the legal errors relating to market definition and the majority's holding therefore "amount[ed] to appellate court fact-finding." Op. 89 (Thomas, J., dissenting).

The same is true about the fourth step balancing failure. The district court spent multiple pages addressing the first three steps of the rule of reason but abruptly ended its analysis without reaching the fourth. As Epic points out in its Petition for Panel Rehearing and Rehearing En Banc (at 15), it is not at all clear what the district court meant by "offset" in its one-sentence summary. Regardless, interpreting that lone sentence to replace an entire step in the rule-of-reason analysis necessarily requires the panel to assume the role of factfinder.

*Third*, even if the panel could correctly predict what the district court would have done based on the district court's one-sentence summary, balancing would have looked quite different on remand because

the district court would have to account for the additional errors identified by the panel that would necessarily impact the analysis.

For example, the district court held Apple's security justification to be a valid business reason. ER148. But the panel recognized the inconsistency between the district court's "conclusion on the security rationale (that opening up payment processing would undermine Apple's competitive advantage on security issues)" with the district court's findings that "Apple has not show[n] how its [IAP] process is any different and that any potential for fraud prevention [through IAP] is not put into practice." Op. 64 n.18. Epic argues that if the district court had balanced the harms and benefits, Apple's interests in security, intrabrand competition, and protecting its intellectual property investment could not outweigh the billions in supracompetitive profits generated by one billion iPhone users. *See* Epic Pet. Reh'g at 12-13. And if the security justification is removed from the list of plausible procompetitive justifications, the scales tip even further in favor of Epic.

Moreover, remand would also have looked different because, as Judge Thomas noted, the district court's decision was based on its analysis of its own market definition. Op. 90 (Thomas, J., dissenting). "The

parties formulated arguments around their own markets—not the district court's market. Remand would have given the parties an opportunity to argue whether the DPLA worked unfair competition in the district court's market." *Id.* The case should be returned to the district court to finish its rule-of-reason analysis by conducting the fourth step's required balancing—which analysis would now have the benefit of the parties' arguments directed to the relevant market and correction of the court's other errors.

## II. The Panel's Holding is Inconsistent with Supreme Court Precedent That Requires Careful Balancing of Anticompetitive Harms and Procompetitive Benefits.

If allowed to stand, the panel's holding will permit other district courts to evade the balancing required by the fourth step, undermining the rule of reason's ultimate purpose. The whole point of rule of reason analysis is to assess the challenged restraint's "actual effect on competition." *NCAA v. Alston*, 141 S. Ct. 2141, 2155 (2021) (internal quotation marks omitted). That goal has remained preeminent since the rule's inception more than a century ago. *See, e.g., Bd. of Trade of Chicago v. United States*, 246 U.S. 231, 238 (1918) (stating the "[t]he true test of legality is whether the restraint imposed is such as merely regulates and

perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition"); *Nat'l Soc'y of Pro. Eng'rs v. United States*, 435 U.S. 679, 691 (1978) (stating "the Court has adhered to the position that the inquiry mandated by the Rule of Reason is whether the challenged agreement is one that promotes competition or one that suppresses competition"); *NCAA v. Bd. of Regents*, 468 U.S. 85, 103-04 (1984) (explaining that the rule of reason inquiry is "whether or not the challenged restraint enhances competition"); *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997) (under rule of reason the "finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition"); *Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 885 (2007) (rule of reason analysis determines "whether a restrictive practice should be prohibited as imposing an unreasonable restraint on competition" (internal quotation marks omitted)).

The test, the Supreme Court has repeatedly stated, requires the fact finder to weigh "all of the circumstances of a case" to assess an alleged restraint's competitive effects. *Leegin*, 551 U.S. at 885 (quoting *Continental T.V., Inc. v. GTE Sylvania Inc.*, 433 U.S. 36, 49 (1977)); *see also Khan*, 522 U.S. at 10 (rule of reason "take[s] into account a variety

of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect"); *Arizona v. Maricopa Cnty. Med. Soc'y*, 457 U.S. 332, 343 (1982) (stating "the rule of reason requires the factfinder to [consider] all the circumstances of the case"). By "design and function" the rule of reason's balancing of all the circumstances "distinguishes between restraints with anticompetitive effect that are harmful to the consumer and restraints stimulating competition that are in the consumer's best interest." *Leegin*, 551 U.S. at 886.

This Court, in line with the Supreme Court's precedent, has required balancing as part of the rule of reason analysis—where a plaintiff has not met its "burden of advancing viable less restrictive alternatives," the court "must balance the harms and benefits of the [challenged restraints] to determine whether they are reasonable." *See, e.g., Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001); *see also Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1413 (9th Cir. 1991) ("Finally, the court must weigh the harms and benefits to determine if the behavior is reasonable on balance."); *L.A. Mem'l Coliseum Comm'n*

*v. NFL*, 726 F.2d 1381, 1391 (9th Cir. 1984) (stating rule of reason requires "a balancing of the arrangement's positive and negative effects on competition" (internal quotation marks omitted)).

The panel recognized this Court's precedent and at least nominally reiterated that those cases "require[] a court to proceed to this fourth step, where like here, the plaintiff fails to carry its step-three burden of establishing viable less restrictive alternatives." Op. at 65. But the rest of the panel's analysis directly undermines this Court's and the Supreme Court's precedent.

*First*, the panel questioned "the wisdom of superimposing a totality-of-the-circumstances balancing step onto a three-part test that is already intended to assess a restraint's overall effect." Op. at 66. In the panel's view, the balancing test does not add any "value" to the rule-of-reason analysis. *Id.* The panel is mistaken. Stopping at step three's less-restrictive-means inquiry and failing to balance the overall competitive effects would "morph the role of antitrust law from an *ex ante* deterrent of net anticompetitive behavior to an *ex post* regulator of procompetitive business decisions." Gabe Feldman, *The Demise of the Rule of Reason*, 24 Lewis & Clark L. Rev. 951, 954 (2020). Firms with the most egregious

anticompetitive behavior could escape liability by showing only the slightest procompetitive benefit.

As one perceptive district court put it, "[i]f no balancing were required at any point in the [rule of reason] analysis, an egregious restraint with a minor procompetitive effect would have to be allowed to continue, merely because a qualifying less restrictive alternative was not shown." *In re NCAA Athletic Grant-in-Aid Cap Antitrust Litig.*, 375 F. Supp. 3d 1058, 1109 (N.D. Cal. 2019), *aff'd*, 958 F.3d 1239 (9th Cir. 2020), *aff'd sub nom. NCAA v. Alston*, 141 S. Ct. 2141 (2021).

The panel counters that the three-step test alone will "likely" identify and prevent such problems. Op. at 66. But even if that were true, "likely" protection provides cold comfort to victims of anticompetitive conduct who wish to assert Sherman Act violations. Plus, a "likely" successful three-part rule-of-reason test is not and never has been the law. Nor should it be. It would sometimes allow what Section 1 forbids—undue restraints of trade. Feldman, *The Demise of the Rule of Reason*, 24 Lewis & Clark L. Rev. at 954 ("By allowing restraints that are collateral to relatively small procompetitive aims but are overwhelmingly net anticompetitive, the [less restrictive alternatives] formulations create

problems that may neuter the competition-protecting function of antitrust law.").

*Second*, the panel holding turns the balancing test into a pro-forma and perfunctory recitation in lieu of rigorous analysis. The panel stated that "[i]n most instances," the balancing test "will require nothing more than—as in *County of Tuolumne*—briefly confirming the result suggested by a step-three failure: that a business practice without a less restrictive alternative is not, on balance, anticompetitive." Op. at 67.

But relegating the rule-of-reason's balancing test to a mere conclusory summation of the first three steps defies Supreme Court precedent, which emphasizes that the three steps "do not represent a rote checklist, nor may they be employed as an inflexible substitute for careful analysis." *Alston*, 141 S. Ct. at 2160. The rule of reason should always fit the case, not the other way around. Indeed, the "whole point of the rule of reason is to furnish 'an enquiry meet for the case, looking to the circumstances, details, and logic of a restraint'" to assess whether it unduly harms competition. *Id.* (quoting *Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 781 (1999)).

For that reason, the panel erred in propping up *County of Tuolumne's* short balancing analysis as a Circuit-wide template for every other rule-of-reason case. Op. at 67. What sufficed for balancing in a relatively easy case like *County of Tuolumne*, Epic Pet. Reh'g at 18-19, does not provide an "enquiry meet for" the much more complex facts at issue here.

Apple's anticompetitive conduct reaches far enough to warrant panel or en banc rehearing. It has harmed and is harming mobile app-developers and millions of citizens within the *Amici* States' boundaries. Meanwhile Apple continues to monopolize app-distribution and in-app-payment solutions for iPhones, stifle competition, and amass supracompetitive profits within the almost trillion-dollar-a-year smartphone industry. Apple must account for its conduct under a complete rule of reason analysis.

Beyond this case, the panel's decision will also make antitrust enforcement more difficult in future cases throughout the Circuit's large business, geographic, and population footprint. And, in today's internet economy, anti-competitive conduct arising in this Circuit impacts consumers across the nation and world.

## CONCLUSION

For the foregoing reasons, the petition for panel or en banc rehearing should be granted.

Respectfully submitted,

*/s/ Melissa A. Holyoak*

MELISSA A. HOLYOAK*
Solicitor General
SEAN D. REYES
Attorney General of Utah
STANFORD E. PURSER
Deputy Solicitor General
Office of the Attorney General
350 N. State Street, Ste. 230
P.O. Box 142320
Salt Lake City, UT 84114
(801) 538-9600
melissaholyoak@agutah.gov
*Counsel of Record

*Counsel for* Amici *States*

## ADDITIONAL COUNSEL

*Counsel for* Amici *States*

TREG R. TAYLOR
Attorney General
State of Alaska

KRIS MAYES
Attorney General
State of Arizona

TIM GRIFFIN
Attorney General
State of Arkansas

PHILIP J. WEISER
Attorney General
State of Colorado

WILLIAM TONG
Attorney General
State of Connecticut

KATHLEEN JENNINGS
Attorney General
State of Delaware

BRIAN L. SCHWALB
Attorney General
District of Columbia

ASHLEY MOODY
Attorney General
State of Florida

ANNE E. LOPEZ
Attorney General
State of Hawai'i

RAÚL LABRADOR
Attorney General
State of Idaho

KWAME RAOUL
Attorney General
State of Illinois

BRENNA BIRD
Attorney General
State of Iowa

DANIEL CAMERON
Attorney General
Commonwealth of Kentucky

JEFF LANDRY
Attorney General
State of Louisiana

ANTHONY G. BROWN
Attorney General
State of Maryland

ANDREA JOY CAMPBELL
Attorney General
Commonwealth of Massachusetts

DANA NESSEL
Attorney General
State of Michigan

KEITH ELLISON
Attorney General
State of Minnesota

ANDREW BAILEY
Attorney General
State of Missouri

AUSTIN KNUDSEN
Attorney General
State of Montana

MICHAEL T. HILGERS
Attorney General
State of Nebraska

AARON D. FORD
Attorney General
State of Nevada

JOHN M. FORMELLA
Attorney General
State of New Hampshire

MATTHEW J. PLATKIN
Attorney General
State of New Jersey

LETITIA A. JAMES
Attorney General
State of New York

JOSH STEIN
Attorney General
State of North Carolina

DREW WRIGLEY
Attorney General
State of North Dakota

DAVE YOST
Attorney General
State of Ohio

ELLEN F. ROSENBLUM
Attorney General
State of Oregon

PETER F. NERONHA
Attorney General
State of Rhode Island

ALAN WILSON
Attorney General
State of South Carolina

MARTY J. JACKLEY
Attorney General
State of South Dakota

JONATHAN SKRMETTI
Attorney General
State of Tennessee

JOHN SCOTT
Provisional Attorney General
State of Texas

## CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,009 words.

Dated: June 20, 2023

*/s/ Melissa A. Holyoak*
MELISSA A. HOLYOAK
Solicitor General

## CERTIFICATE OF SERVICE

I certify that on June 20, 2023, I caused service of the forgoing brief to be made by electronic filing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all parties with an email address of record, who have appeared and consent to electronic service in this action.

Dated: June 20, 2023

*/s/ Melissa A. Holyoak*
MELISSA A. HOLYOAK
Solicitor General