Nos. 21-16506 & 21-16695

# United States Court of Appeals for the Ninth Circuit

EPIC GAMES, INC.,
*Plaintiff, Counter-defendant – Appellant, Cross-Appellee,*

v.

APPLE INC.,
*Defendant, Counterclaimant – Appellee, Cross-Appellant.*

Appeal from the U.S. District Court
for the Northern District of California
The Honorable Yvonne Gonzalez Rogers (No. 4:20-cv-05640-YGR-TSH)

**APPELLANT, CROSS-APPELLEE EPIC GAMES, INC.'S RESPONSE TO APPLE INC.'S MOTION TO STAY MANDATE PENDING PETITION FOR WRIT OF CERTIORARI**

Christine A. Varney
Gary A. Bornstein
Antony L. Ryan
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center
San Francisco, CA 94111-4180
(415) 591-7500

Thomas C. Goldstein
4323 Hawthorne St., NW
Washington, DC 20016
(202) 362-0636

*Counsel for Appellant, Cross-Appellee Epic Games, Inc.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTION ..................................................................................................1

I.    BACKGROUND...........................................................................................3

II.   THE ARGUMENTS NOW RAISED BY APPLE HAVE BEEN WAIVED AND DO NOT PRESENT ANY SUBSTANTIAL QUESTION.............................................................4

III.  APPLE'S ARGUMENTS DEPEND ENTIRELY ON REJECTING THE PANEL'S FACTUAL CONCLUSIONS. ...........9

CONCLUSION......................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barefoot v. Estelle,*
   463 U.S. 880 (1983) .................................................................................. 1, 2

*Coal. for Econ. Equal. v. Wilson,*
   122 F.3d 718 (9th Cir. 1997) ........................................................................... 2

*Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy,*
   4 Cal. App. 4th 963 (1992) ............................................................................. 7

*Epic Games, Inc. v. Apple Inc.,*
   67 F.4th 946 (9th Cir. 2023) ................................................................. passim

*High Sierra Hikers Ass'n v. Blackwell,*
   390 F.3d 630 (9th Cir. 2004) ........................................................................... 7

*McGill v. Citibank, N.A.,*
   2 Cal. 5th 945 (2017) ....................................................................................... 7

*Netherland v. Ruffle,*
   515 U.S. 951 (1995) ......................................................................................... 2

*S. Park Indep. Sch. Dist. v. United States,*
   453 U.S. 1301 (1981) ....................................................................................... 2

*Times-Picayune Publ'g Corp. v. Schulingkamp,*
   419 U.S. 1301 (1974) ....................................................................................... 2

**Statutes & Rules**

California's Unfair Competition Law .................................................... 1, 4

Fed. R. App. P. 41 ............................................................................................ 1

Fed. R. Civ. P. 23 ............................................................................... 5, 6, 7, 9

Unfair Competition Law ............................................................... 1, 4, 6, 7

## INTRODUCTION

Apple has scraped the very bottom of the barrel, and come up empty. The district court entered judgment and an injunction under California's Unfair Competition Law (UCL). Apple appealed, overwhelmingly devoting its argument in this Court to a question of California law: whether the dismissal of Epic's Sherman Act claims precluded its UCL claims as well. The panel unanimously held it did not. The full Court denied rehearing en banc, with no judge calling for a response or a vote. That ruling—which rests on state law that will not be reviewed by the U.S. Supreme Court—is now final. Apple does not disagree.

So, in seeking a stay of the mandate, Apple has no choice but to rely on arguments that are so weak that it previously only mentioned them barely, or not at all. Those arguments provide no basis for a stay because they raise no "substantial question." Fed. R. App. P. 41(d)(1). Indeed, to the extent Apple preserved any of these arguments, not a single judge— below or in this Court—has sided with it. And contrary to Apple's assertion that this Court freely grants such stays, Motion 8, there is a settled "three-part inquiry," which was adopted in *Barefoot v. Estelle*, 463 U.S. 880, 885-86 (1983), and applied by the Supreme Court in this context in

*Netherland v. Ruffle*, 515 U.S. 951, 952 (1995). *See Coal. for Econ. Equal. v. Wilson*, 122 F.3d 718, 719 (9th Cir. 1997). To warrant a stay, there "must be a reasonable probability that four Members of the [Supreme] Court would consider the underlying issue sufficiently meritorious for the grant of certiorari . . .; there must be a significant possibility of reversal of the lower court's decision; and there must be a likelihood that irreparable harm will result if that decision is not stayed." *Barefoot,* 463 U.S. at 895-96. *See also S. Park Indep. Sch. Dist. v. United States*, 453 U.S. 1301, 1303 (1981) (quoting *Times-Picayune Publ'g Corp. v. Schulingkamp*, 419 U.S. 1301, 1305 (1974)).

For the reasons that follow, there is no realistic prospect that four Justices would grant certiorari on the questions raised by Apple's motion, much less reverse this Court. The issues that Apple cites have been waived and are not certworthy. Just as important, Apple's arguments reduce to a factual dispute—not a substantial question sufficient to justify a stay of the mandate. Because Apple's forthcoming petition for certiorari has no realistic chance of success, the only purpose of a stay would be additional delay. An injunction that should have taken effect more than a year ago would be delayed again, likely at least for another seven

2

months—and perhaps much longer. Apple's motion should therefore be denied.

## I. BACKGROUND.

The district court's injunction applies to Apple's anti-steering rules. Apple requires that in-app purchases of digital goods be made using Apple's payment processor, which charges developers an exorbitant 30% commission. But users may purchase those goods outside the app on other platforms—such as from a website or PC version of the same app. The commission rates on those other platforms—and in turn the ultimate price paid by consumers—will often be lower. The Epic Games Store in particular charges only 12%.

But Apple's anti-steering rules prohibit iOS developers from informing users about, or directing iPhone users to, those available alternatives. The only purpose of such a prohibition is to shield Apple from competition (however limited) and deprive consumers of information and direct access to alternatives that can save them money. The district court

accordingly held that the anti-steering rules violate California's Unfair Competition Law.[1]

## II. THE ARGUMENTS NOW RAISED BY APPLE HAVE BEEN WAIVED AND DO NOT PRESENT ANY SUBSTANTIAL QUESTION.

Based on its holding that the anti-steering rules violate the UCL, the district court enjoined Apple from enforcing them. That is not a "non-party" injunction; the only parties are Epic and Apple. But Apple objects that although it has now been finally determined that its rules violate California law, the district court was powerless to prohibit Apple from continuing to enforce them against any developer other than Epic.

---

[1] Apple thus has no claim to equitable relief in the form of a stay from this Court. It cannot claim a legitimate injury from allowing developers to inform consumers about payment solutions that Apple itself permits. Its claim that the injunction would "limit Apple's ability to protect users from fraud, scams, malware, spyware, and objectionable content," Motion 2, rings hollow; the injunction does not allow any new content on iOS that Apple does not allow today—it merely allows developers to inform users that such content can be obtained at a lower price elsewhere. Apple is not protecting users; it is protecting its bottom line. By contrast, Epic, other app developers, and consumers are all directly injured when Apple requires that information to be concealed. In the extremely unlikely event the Supreme Court were to invalidate the injunction, Apple could simply and easily revert to its existing anti-steering rules. This Court should not stretch to provide Apple exceptional relief in order to allow it to continue to mislead tens of millions of iPhone users.

Apple's argument is that the permissible scope of an injunction is limited by Epic's own interest in the lawsuit. It asserts two bases for that claim. First, Article III of the Constitution is limited to actual cases or controversies. Apple argues that this case presents no controversy regarding Apple's application of the anti-steering rules to developers other than Epic. Motion 18-21. Second, Fed. R. Civ. P. 23 provides a mechanism for certifying class actions. Apple argues that the only permissible mechanism to apply an injunction to other developers is to have them certified as a class. Motion 13-15. In passing, Apple adds the assertion that the injunction violates its rights under the Due Process Clause. Motion 14.

Apple has waived those arguments. Apple did not raise this Article III argument at all in its opening brief before the panel. *See* Apple Br. 103-04 (asserting only that Epic lacked Article III standing to claim injury directly for itself or its subsidiaries, without ever referring to the breadth of the injunction); Apple Br. 109-12 (challenging scope of the injunction without discussing Article III). Apple's entire discussion of Rule 23 consisted of two sentences, neither of which argued that the Rule affirmatively prohibits the injunction. Apple Br. 111 (suggesting that injunction "subverts" Rule 23). Apple invoked the Due Process Clause in

5

only one sentence. Apple Br. 111. Apple thus failed to develop any of those arguments enough to be preserved in this Court, and in turn to be presented to the Supreme Court.

The arguments Apple now invokes were not only so underdeveloped as to be waived, they are uniquely poor candidates for review because (as Apple admits) the panel did not even address them. Motion 12. There is no realistic possibility the Supreme Court would use this case to resolve those questions as there are no legal rulings by the panel to review.

Apple's arguments are moreover meritless. Even if Epic's interest is limited to its own apps, it presents a live and justiciable controversy under Article III regarding the anti-steering rules' application to Epic. And the district court did not purport to certify a class action or otherwise bind any third parties to the judgment, so Rule 23 is by its terms inapplicable.

The issue that Apple is actually complaining about is instead the *scope* of the injunction—*i.e.*, the breadth of the district court's remedial power. But it has no substantial argument on that point either. The injunction is appropriate at the very least because the Unfair Competition

6

Law is a public-interest statute that authorizes sweeping public injunctions against anticompetitive acts. "The remedial power granted under [the UCL] is extraordinarily broad," *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963, 972 (1992), and authorizes the court to prevent "future injury to the general public," *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 951 (2017). Under federal law, the district court in turn had "broad latitude in fashioning equitable relief." *High Sierra Hikers Ass'n v. Blackwell*, 390 F.3d 630, 641 (9th Cir. 2004) (cleaned up).

Apple does not even cite *any* non-Ninth Circuit appellate cases that supposedly give rise to a circuit conflict regarding Rule 23 and Article III, much less any cases that address that remedial question. In particular, no appellate decision adopts anything resembling a rule that "the district court [must] make a specific finding that a universal injunction was necessary to provide complete relief." Motion 16. This case cannot possibly present a circuit conflict that would trigger Supreme Court review.

Apple cites this Court's decisions holding that injunctions should relate to the plaintiff's claim, but the panel faithfully applied that rule,

7

and, in any event, the Supreme Court does not resolve intra-circuit disagreements. *Epic Games, Inc. v. Apple Inc.*, 67 F.4th 946, 1002 (9th Cir. 2023) ("Moreover, injunctive relief must be no more burdensome to the defendant than necessary to provide complete relief to the plaintiff.") (citations omitted) (cleaned up). Apple disagrees with the panel's application of that principle; it thinks the district court abused its discretion and went too far. But that is an entirely fact-bound application of a rule applied by every circuit, not a legal question that would interest the Supreme Court.

Nor does this case present the concern with "nationwide" injunctions that has drawn some interest among some Supreme Court Justices. That distinguishable and inapplicable concern is with plaintiffs (such as a single plaintiff in an immigration case) securing injunctive relief (almost always against the government) throughout the country in jurisdictions in which they have no interest. In this private case, every iOS app is sold in every state. So any injunction must necessarily be nationwide. Apple does not actually argue otherwise.

8

Apple's remaining references to various other supposed circuit conflicts regarding Article III standing are most notable for the fact that Apple does not even attempt to explain how this case actually implicates them. *See* Motion 16 ("juridical link doctrine"); Motion 20 (intangible injuries as a basis for standing); Motion 20 (imminence requirement under Article III). Because it does not.

### III. APPLE'S ARGUMENTS DEPEND ENTIRELY ON REJECTING THE PANEL'S FACTUAL CONCLUSIONS.

Apple challenges the district court's injunction on the ground that it applies to Apple's relationships with developers other than Epic. Apple asserts as a factual matter that Epic's interest in this case is only as a developer of its own apps. On that basis, Apple argues that the injunction violates both Rule 23 and Article III.

Those are not substantial legal questions presented by this case, because the panel unanimously rejected Apple's factual premise. The panel correctly decided the case on the basis that Epic has a far broader interest than merely as a developer of its own apps—but also as a distributor of apps through its own store, and as a provider of a payment solution. The panel thus did not adopt or apply any legal rule that conflicts with the principles cited by Apple. Apple does not even seriously

9

argue otherwise: the principal appellate decisions it cites are from the Ninth Circuit, and those decisions apply principles that the panel faithfully embraced. *See, e.g.*, Motion 10 (citing six cases, three of which are from the Ninth Circuit). Apple's disagreement with the panel's understanding of the facts has no merit but, more importantly, it does not raise a substantial legal question that the Supreme Court would realistically review and therefore warrant a stay of the mandate.

To be sure, Epic does have its own significant interest in the injunction in its role as a developer. Although Apple stresses that Epic's most popular title *Fortnite* is not available on the App Store, the panel correctly found other apps produced by an Epic subsidiary are, so that "Epic—through its subsidiary—continues to be affected by the policies that govern the App Store." *Epic Games,* 67 F.4th at 967; *see also* FER-10-11.

But even more importantly, as the panel found, "Apple's argument [that Epic is merely injured as an app developer] ignores two critical aspects of the record." *Epic Games,* 67 F.4th at 1000. Epic "is a multi-billion-dollar video game company with three primary lines of business, each of which figures into various aspects of the parties' appeals." *Id.* at

10

967. Particularly relevant here, Epic produces both the Epic Games Store (a store for PC apps) and Epic Direct Pay (a payment solution). *See, e.g.*, 2-ER-313-14.

The district court "found that Epic is sufficiently injured to seek injunctive relief because Epic is a competing games distributor and would earn additional revenue but for Apple's restrictions. . . . The court concluded that Epic satisfied all the requirements for injunctive relief and the nature of Epic's injury warranted an injunction preventing Apple from enforcing the provision against any developer." *Epic Games,* 67 F.4th at 972; *see also id.* at 1003 ("The district court found that the anti-steering provision harmed Epic by . . . preventing other apps' users from becoming would-be Epic Games Store customers. Because Epic benefits in this second way from consumers of other developers' apps making purchases through the Epic Games Store, an injunction limited to Epic's subsidiaries would fail to address the full harm caused by the anti-steering provision.").

Apple ignores that the district court's ruling receives broad deference. An appellate court reviews "the scope of [the] injunction[] for an

11

abuse of discretion and . . . the factual findings underlying the injunction for clear error." *Id.* at 1002-03.

The panel in turn correctly concluded that "[t]he district court did not clearly err in finding that Epic was injured, err as a matter of law when applying California's flexible liability standards, or abuse its discretion when fashioning equitable relief." *Id.* 973. The panel accordingly found that Epic was entitled to the injunction in its role as "a video game publisher and distributor." *Id.* at 968.

Specifically, the panel reasoned that Epic "offers the Epic Games Store as a games-transaction platform on PC computers and Macs and seeks to do the same for iOS devices." *Id.*; *see also* 2-ER-315-16. The Epic Games Store's user base is massive: it "has over 180 million registered accounts and over 50 million monthly active users." *Epic Games,* 67 F.4th at 968. That makes Epic "a direct competitor [with Apple] when it comes to games that feature cross-platform functionality like *Fortnite.*" *Id.*

In that role as a broad, direct competitor with Apple, Epic is injured by the application of the anti-steering rules to other developers. The panel explained that: "Epic is a competing game distributor through the Epic Games Store and offers a 12% commission compared to Apple's 30%

12

commission. If consumers can learn about lower app prices, which are made possible by developers' lower costs, and have the ability to substitute to the platform with those lower prices, they will do so—increasing the revenue that the Epic Games Store generates. As such, the district court did not clearly err in finding that Apple's anti-steering provision injures Epic." *Id.* at 1000.

The panel specifically agreed with the district court that a broad injunction was required because there was no administrable way to tailor it more narrowly. There was no non-speculative way to determine "the availability of each of those 300,000 games on the Epic Games Store, the percentage of revenue on each game that comes from users who multi-home and can therefore substitute, and how high the substitution rate would be among those multi-home users." *Id.* at 1003.

Apple mischaracterizes the opinion in claiming that the panel adopted a "new rule" "that, as long as an injunction is somehow 'tied to' the named plaintiff's supposed injury, then the district court does not abuse its discretion in extending the injunction, universally, to non-parties." Motion 11. In fact, only after having found that Epic's interest in the injunction arises from its role as a competing games store, the panel

13

correctly held that "the district court did not abuse its discretion when setting the scope of the injunctive relief because the scope is tied to Epic's injuries." *Epic Games*, 67 F.4th at 1003. To address the injury to Epic as a distributor of other developers' apps, the remedy logically must extend to those other developers.

Epic is also injured by the application of the anti-steering rules to other developers in its role as a provider of a competing payment solution. Epic developed its own payment solution, for which Epic charges just a 12% commission. *See* 1-ER-78; *see also* 2-ER-313-14. Epic wishes to make this payment solution "available to other developers," 2-ER-316, but Apple's anti-steering restraints preclude competition by "contractually enforc[ing] silence," 1-ER-169, and preventing developers from linking to Epic's payment solution from within their apps, 1-ER-169.

Indeed, Apple's Motion is filled with implicit acknowledgments that, at bottom, it is merely disputing the factual findings of the district court, which this Court found were not clearly erroneous. It argues: "the panel affirmed on the ground that Epic might be injured by losing commissions on sales through the Epic Games Store or by its subsidiaries. No evidence in the record supports this conclusion." Motion 19 (citations

14

and emphasis omitted); *see also* Motion 11 ("the panel affirmed the district court's injunction because it found the anti-steering provisions might make it more difficult for Epic to attract consumers to its competing game distribution store"); Motion at 19 ("Epic did not prove at trial that it had been injured by the anti-steering provisions in the past or that it would experience injury prospectively if the anti-steering provisions were not enjoined") (emphasis omitted); *ibid.* ("[Epic] offered no evidence to substantiate [its] theory"). Those are all purely factual claims, on which Apple's legal arguments depend, and which have no prospect of Supreme Court review.

## CONCLUSION

Apple's Motion for a Stay of Mandate should be denied.

July 5, 2023									Respectfully submitted,

*/s/ Thomas C. Goldstein*
Thomas C. Goldstein

4323 Hawthorne St., NW
Washington, DC 20016
(202) 362-0636

Christine A. Varney
Gary A. Bornstein
Antony L. Ryan
Yonatan Even
CRAVATH, SWAINE & MOORE LLP
825 Eighth Avenue
New York, NY 10019-7475
(212) 474-1000

Paul J. Riehle
FAEGRE DRINKER BIDDLE & REATH LLP
Four Embarcadero Center
San Francisco, CA 94111
(415) 591-7500

*Counsel for Appellant, Cross-Appellee Epic Games, Inc.*

16

**E-FILING ATTESTATION**

I, Gary A. Bornstein, am the ECF User whose ID and password are being used to file this document. I hereby certify that on July 5, 2023, I electronically filed the foregoing with the Clerk of the Court using the ECF system, which will send notification of such filing to all ECF participants.

                                          */s/ Gary A. Bornstein*
                                          Gary A. Bornstein